***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds good grounds to receive further evidence, but not to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** DEFENDANTS' MOTION TO AMEND THE RECORD
Defendants' moved, pursuant to Rule 701(6) of the Workers' Compensation Rules of the North Carolina Industrial Commission, for an Order allowing the amendment of the record in this matter to include additional evidence in the form of correspondence between the parties, on the grounds that such evidence is relevant to the determination of the issues in this matter, and Defendants would be prejudiced if such evidence is not admitted. Plaintiff submitted a written *Page 2 
response to Defendants' Motion stating that he did not object to the admission of this additional evidence. After consideration of the written arguments of the parties, Defendants' Motion to Amend the Record is hereby GRANTED. Accordingly, the correspondence attached as exhibits to Defendants' Motion shall be attached to the end of the stipulated exhibits.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS
1. On November 28, 1995, Plaintiff sustained a compensable work injury by accident during the course of his employment with Defendant-Employer.
2. At the time of Plaintiff's November 28, 1995 work injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. An employment relationship existed between the parties at all times relevant to these proceedings.
4. Defendant-Carrier provided workers' compensation insurance coverage at all times relevant to these proceedings.
5. The parties reached a Compromise Settlement Agreement in this matter. On January 2, 2008, the North Carolina Industrial Commission filed an Order Approving Agreement for Final Compromise Settlement and Release.
6. Plaintiff's counsel received a check in the amount of $56,532.00 to fund a Medicare Set Aside account from Defendants in an envelope with a postmark date of March 28, 2008. *Page 3 
7. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Various documents, including:
 i. North Carolina Industrial Commission forms and filings;
 ii. Correspondence from Plaintiff's counsel to Defendants' counsel dated March 7, 2008, March 27, 2008, and April 25, 2008;
 iii. Correspondence from Department of Health and Human Services, Centers for Medicare Medicaid Services (CMS) to PMSI dated April 21, 2008;
 iv. Correspondence from PMSI to Defendant-Carrier dated April 24, 2008;
 v. January 13, 2010 Affidavit of Ms. Allison Bono.
 *********** ISSUE
The issue to be determined is whether Plaintiff is entitled to a late payment penalty on the payment of the Medicare Set Aside account referenced in the November 26, 2007 Agreement for Final Compromise Settlement and Release in this matter under N.C. Gen. Stat. § 97-18(g).
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. On November 28, 1995, Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment. Defendants admitted the compensability of Plaintiff's November 28, 1995 work injury, and paid on-going temporary total disability and medical compensation.
2. On January 26, 2005, Plaintiff filed a Form 18M seeking additional medical treatment. On October 13, 2005, Executive Secretary Tracey H. Weaver approved Plaintiff's Form 18M. On September 25, 2006, a Deputy Commissioner affirmed the approval of Plaintiff's Form 18M, and neither party appealed this issue further.
3. On November 20, 2007, the parties participated in a voluntary mediation. Following mediation, the parties reached a settlement on November 26, 2007 in which Defendants agreed to pay Plaintiff $180,000.00, including attorney's fees.
4. As part of the settlement agreement Defendants also agreed to fund a Medicare Set Aside account in the amount of $56,532.00 for the purpose of payment of Plaintiff's future medical expenses. Defendants further agreed to add up to $5,000.00 to the Medicare Set Aside amount if Centers for Medicare Medicaid Services (CMS) required a higher set aside. Plaintiff was a Medicare beneficiary at the time of settlement, and CMS required that a Medicare Set Aside (MSA) be submitted for approval. Pursuant to paragraph number three on page four of the November 26, 2007 Agreement for Final Compromise Settlement and Release, "The Medical Set Aside will be reviewed by CMS." Consequently, the MSA provisions of the settlement agreement could not be finalized until CMS made its determination.
5. On January 2, 2008, the Deputy Commissioner entered an Order approving the Agreement for Final Compromise Settlement and Release in the amount of $180,000.00. The Order did not address the MSA funding or include the $56,532.00 MSA in the approved award. *Page 5 
The settlement proceeds of $180,000.00 were issued by Defendant-carrier on January 11, 2008, in accordance with the January 2, 2008, Order. Based upon the terms of the settlement agreement, which made Defendants' obligation to pay up to $5,000.00, in additional money to fund the MSA contingent upon the CMS decision, Defendants' adjuster understood that the MSA funds were to be issued to Plaintiff following review and approval of the MSA by CMS.
6. At some point in early March 2008, Plaintiff's counsel inquired to Defendants about payment of the MSA funds because the lack of such funds prevented Plaintiff from scheduling medical appointments. Despite the adjuster's understanding that the MSA was to be funded after receiving CMS approval, she agreed to forward the $56,532.00 to fund the MSA as soon as she was aware that there was a misunderstanding over the terms of the funding of the MSA. The MSA funds were issued to the plaintiff on March 28, 2008. On April 21, 2008, CMS ultimately approved the submitted MSA proposal and determined that the $56,532.00 allocation adequately considered Medicare's interests. Plaintiff has asserted a claim for a 10 percent late payment penalty pursuant to N.C. Gen. Stat. § 97-18(g), alleging that Defendants failed to timely pay the $56,532.00 to fund the MSA.
7. The Full Commission finds, based upon the greater weight of the evidence, that the timing for funding the MSA is not addressed in the November 26, 2007 Agreement for Final Compromise Settlement and Release. Consequently, the parties did not specifically agree that the MSA fund would be established at the same time the settlement proceeds were to be paid to Plaintiff. The Full Commission further finds that since the amount needed to fund the MSA could not be determined until CMS rendered a decision and Defendants could not ascertain their final obligation under the settlement until the CMS decision, it was not unreasonable for *Page 6 
Defendants to wait until the decision of CMS to fund the Medicare Set Aside, absent specific language to the contrary in the settlement agreement.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Pursuant to N.C. Gen. Stat. § 97-17, settlement agreements are allowed between the employee and employer so long as the amount of compensation and the time and manner of payment are "in accordance with the provisions of this Article." The time for payment of a settlement agreement is 24 days after Industrial Commission approval. N.C. Gen. Stat. §§ 97-17, 97-18(g) (2009); Carroll v.Living Ctrs. Southeast, Inc.,157 N.C. App. 116, 577 S.E.2d 925 (2003).
2. Defendants are in compliance with the Order Approving Agreement for Final Compromise Settlement and Release as they timely paid the $180,000.00 approved in this Order and the Order did not address the funding of the MSA. N.C. Gen. Stat. § 97-18(g) (2009).
2. The issue presented in this case is controlled by the language of the settlement agreement. The November 26, 2007 Agreement for Final Compromise Settlement and Release did not address the timing of the funding for the MSA. Moreover, the parties did not agree that the MSA fund would be established within the same time the settlement proceeds were to be paid to Plaintiff. Because the November 26, 2007 Agreement for Final Compromise Settlement and Release did not address the timing of the funding for the Medicare Set Aside and there was not "a meeting of the minds" by the parties with respect to such timing, Defendants should not be penalized by the assessment of a late payment penalty under N.C. Gen. Stat. § 97-18(g) for the *Page 7 
timing of payment of the MSA funds. Although the parties had different understandings concerning the timing of the funding of the MSA, such confusion is not based upon the express language of the settlement agreement. N.C. Gen. Stat. § 97-18(g) (2009);Chappell v. Roth, 353 N.C. 690, 548 S.E.2d 499 (2001).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for a 10 percent late payment penalty under N.C. Gen. Stat. § 97-18(g) is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of September 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1